UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No.  4:16CR429 HEA/PLC |
| | ) |
| DESHAWN DENTON, | ) |
| | ) |
| Defendant. | ) |

## Report and Recommendation

The Government charged Defendant Deshawn Denton with two counts of violation of 18 U.S.C. §2119 (carjacking); three counts of violation of 18 U.S.C. §924(c) (brandishing a firearm in furtherance of crimes of violence); and one count of violation of 18 U.S.C. §1201 (kidnapping).  Defendant filed motions to suppress evidence related to the (1) Defendant's cellular telephone; and (2) "sequential physical lineup."  The Court held a suppression hearing on both motions.  Based upon the arguments of the parties and the evidence adduced at the hearing, the Court makes the following findings of fact and conclusions of law and recommends denial of Defendant's motions to suppress.[1]

## Findings of Fact

Two carjackings occurred in downtown St. Louis on February 7 and 9, 2016.  With respect to the February 9 carjacking, the two victims were seated in their vehicle at 1212 Washington Avenue when they were approached by two individuals, later identified as Defendant and co-defendant Kendreal Graham.  Following a very brief verbal interaction, Defendant and his co-defendant Graham, allegedly forced the victims into the back of the

---

[1] This matter is before the undersigned U.S. Magistrate Judge pursuant to 28 U.S.C. Section 636(b).

victims' vehicle and proceeded to East St. Louis. Defendants also took a wedding ring, pool cues and the victims' cellular telephones. While in East St. Louis, the defendants drove to a bank and forced the female victim to divulge her pin number. Defendants then used the pin number to withdraw money from the female victim's account. Eventually, defendants drove to the Casino Queen and ordered the victims out of the vehicle. The victims' vehicle was recovered in East St. Louis. Defendant later pawned the ring. The ring was recovered at a pawn shop in East St. Louis. The victims' cell phones were recovered in the possession of a second co-defendant, Khylon Hampton.

The East St. Louis police took Defendant into custody in connection with an unrelated robbery on March 7, 2016. St. Louis Metropolitan Police Officer David Rudolph questioned Defendant in the afternoon of March 7, 2016 at the East St. Louis police station. Prior to questioning, the Defendant was read his <u>Miranda</u> rights. At the interview, Officer Rudolph showed Defendant a videotape of the February 7th carjacking and Defendant admitted that he was pictured in the video. Defendant, however, claimed that he traded drugs for the vehicle. Immediately following the interview, Officer Rudolph escorted Defendant towards the East St. Louis jail. Officer Rudolph learned that Defendant had an LG cellular telephone "concealed on his person." Officer Rudolph informed Defendant that he intended to seize the cellular telephone as evidence, and Defendant responded, as follows: "Go ahead and look in the phone. There's not going to be anything in there."

Officer Rudolph testified at the hearing that Defendant did not appear to be under the influence of any drugs or alcohol. Officer Rudolph also advised that Defendant appeared to be of average intelligence, that he was twenty-eight years old and had prior arrests and convictions. Finally, Officer Rudolph acknowledged that, although Defendant was in custody at the time he

consented, he was not threatened "in any way with respect to [the] cell phone."

On March 8, 2016, Officer Rudolph obtained a search warrant for the cellular telephone from the Circuit Court for the City of St. Louis. Among other matters, Officer Rudolph stated in his affidavit that Defendant provided verbal consent to search his cellular telephone and also stated that "that there was nothing of evidentiary value contained within as he had recently obtained the phone." Officer Rudolph also advised in his affidavit that Deshown (sic) Denton was identified in a robbery on South Fourteenth Street and 1212 Washington Avenue, that Denton had identified himself in various surveillance videos and that the cellular telephone sought to be searched was Denton's. On September 12, 2016, an FBI agent, Matthew Baugh, obtained a federal search warrant for Defendant's LG cellular telephone. Agent Baugh stated, among other things, that he believed Defendant's cellular telephone contained evidence related to violations of various federal statutes, including those relating to "firearms, carjacking, kidnapping, conspiracy, wire fraud, interstate transportation of property obtained by fraud and money laundering." The federal search warrant specifically referenced a carjacking and kidnapping occurring on both February 7 and 9, 2016 involving Defendant.

On April 6, 2016, Detective Anton Treis of the St. Louis Metropolitan Police Department presented the victims of the February 9 carjacking, kidnapping and robbery a photographic lineup. Treis conducted the lineup at the Central Patrol Division headquarters. Detective Treis acted as a "blind administrator," i.e., he was unaware of the suspect's identity. Detective Treis showed each victim separately a series of four photographs. The four photographs consisted of "head shots." Neither Officer Rudolph nor any other police officers were present during the photographic lineup. Both victims identified Defendant, who was marked as number one.

**Conclusions of law**

Defendant moves to suppress the cellular telephone search on the grounds that no probable cause existed for the issuance of a warrant. More specifically, Defendant argues that the police officer's affidavit failed to contain evidence establishing a connection between Defendant's cellular telephone and the commission of the carjacking on February 9. With respect to the lineup, Defendant argues that the procedure was "impermissibly suggestive." Defendant also argues that "under the totality of the circumstances, this created a substantial likelihood of irreparable misidentification."

**A. The cellular telephone search**

The Government contends that because Defendant consented to the search of his cellular telephone, the Court must deny Defendant's motion to suppress. It is well-settled that "[a] defendant's voluntary consent to be searched is an exception to the Fourth Amendment's warrant requirement." United States v. Esquivias, 416 F.3d 696, 700 (8th Cir. 2005) (citing Schneckloth v. Bustamonte, 412 U.S. 218, 222 (1973). The Government has the burden of demonstrating that a defendant's consent to search was freely given. United States v. White, 81 F.3d 775, 780 (8th Cir. 1996). When evaluating the voluntariness of consent, a number of factors are relevant, including: (1) the individual's age and mental ability; (2) whether the individual was intoxicated or under the influence of drugs; (3) whether the individual was informed of his Miranda rights; and (4) whether the individual was aware, through prior experiences, of the protections that the legal system provided for suspected criminals. Esquivias, 416 F.3d at 700. "In examining the environment in which consent was given, courts should ask whether the person who consented: (1) was detained and questioned for a long or short time; (2) was threatened, physically intimidated, or punished by the police; (3) relied upon promises or misrepresentations made by

4

the police; (4) was in custody or under arrest when the consent was given; (5) was in a public or a secluded place; or (6) either objected to the search or stood by silently while the search occurred." United States v.Chaidez, 906 F.2d 377, 381 (8th Cir. 1990) (internal citations omitted).

Defendant did not address issues of consent in his motion. In particular, Defendant has not claimed that his verbal consent was involuntary or coerced.[2] However, at oral argument following the hearing, counsel argued that the following circumstances invalidated any purported consent: (1) the absence of forms or videotape corroborating consent; (2) the lack of particularity in the consent; and (3) the words "you're not going to find anything" do not constitute consent.

Addressing Defendant's first challenge that the Government lacks independent corroboration by way of forms or videotape, the Court views this challenge as related to the overall credibility of the police officer's testimony. Defense counsel conceded at oral argument that he was unaware of case law requiring videotape or executed consent forms as corroboration of verbal consent. Counsel was able to thoroughly cross-examine Officer Rudolph about his interaction with Defendant regarding the cellular telephone. Officer Rudolph's testimony with respect to his conversation with Defendant was consistent and credible. There is nothing in the record to suggest that Defendant did not voluntarily consent to the search of his cellular telephone.

Defendant's second challenge relates to a lack of particularity in Defendant's statement of consent. "A search resulting from an individual's general statement of consent is limited by

---

[2] At the hearing, defense counsel appeared to suggest that Officer Rudolph's statement to Defendant that he would obtain a warrant undercuts the validity of Defendant's consent. However, even where an officer informs a Defendant that he intends to obtain a warrant that alone is insufficient to invalidate the consent. See United States v. Severe, 29 F.3d 444, 446 (8th Cir. 1994); United States v. Larson, 978 F.2d 1021, 1023 (8th Cir. 1992).

5

boundaries of reasonableness." United States v. Alverez, 235 F.3d 1086, 1088 (8th Cir. 2000) (citing United States v. Martel-Martines, 988 F.2d 855, 858 (8th Cir. 1993)). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness - - what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Florida v. Jimeno, 500 U.S. 248, 251 (1991). The defendant's "actual subjective state of mind at the time that he allegedly gave his consent is not determinative; our focus, rather, is on how a reasonable person could have perceived his state of mind at that time." United States v. Cedano-Medina, 366 F.3d 682, 685 (8th Cir. 2004). Moreover, "[w]here a suspect provides general consent to search, only an act clearly inconsistent with the search, an unambiguous statement, or a combination of both will limit the consent." United States v. Beckmann, 786 F.3d 672, 679 (8th Cir. 2015) (citing United States v. Lopez-Mendoza, 601 F.3d 861, 867 (8th Cir. 2010)).

Applying the principles above, it is clear that Defendant's challenge to a lack of particularity fails. Defendant expressly directed Officer Rudolph to look in Defendant's cellular telephone when Officer Rudolph informed Defendant that the telephone would be seized as evidence. The statement that "[t]here's not going to be anything in there" reinforces the lack of limitation with respect to the scope of consent. A "typical reasonable person" would clearly have understood that Defendant was not intending to limit the scope of his consent. Thus, a search of the entire cellular telephone was within the scope of Defendant's consent.

Finally, Defendant argues that the words "you're not going to find anything" do not constitute consent. However, Officer Rudolph's uncontradicted testimony established that Defendant stated "Go ahead and look in the phone." Thus, while "you're not going to find anything," as a statement may not fully communicate consent, the words "Go ahead and look in

6

the phone" adequately communicate consent. Accordingly, the Court concludes that Defendant's verbal consent provided police officers authority to search Defendant's cellular telephone in the absence of a warrant.[3]

### B. The photographic lineup

Defendant moves to suppress the identification that resulted from a photographic lineup administered to the victims of the February 9 carjacking. More specifically, Defendant argues that the lineup was "impermissibly suggestive" because Defendant's photograph was the first in the array of four that each victim was shown. Defense counsel also asserted at the hearing that the other three photographs showed individuals who were different in height and weight than Defendant.

Analysis of identification testimony necessarily involves a two-step approach. United States v. Tucker, 169 F.3d 1115, 1117 (8th Cir. 1999); United States v. Patterson, 20 F.3d 801, 805 (8th Cir. 1994). First, a court determines whether the identification procedures were unduly suggestive. Tucker, 169 F.3d at 117; Patterson, 20 F.3d at 805. Second, if the procedures used were unduly suggestive, a court considers the totality of the circumstances to determine whether the identification testimony is nevertheless reliable. Id.

The identification of a suspect through the use of a photographic display or a photographic lineup is, in general, an acceptable procedure. See United States v. Briley, 726

---

[3] Defendant, in his motion, attacked the sufficiency of probable cause with respect to the federal search warrant, focusing on the insufficiency of the FBI agent's affidavit. The Government asserted in its response to the motion that it did not intend to use results from the execution of the federal warrant. At the hearing, the Government adduced testimony only related to the state search warrant. Although Defendant did not attack the state search warrant in his motion, at the hearing, he articulated entirely different grounds, arguing that the state warrant lacked particularity because the item to be searched was a cellular telephone and the warrant did not specify the areas of the cellular telephone sought to be searched. Because the Court concludes that Defendant consented to the search, the Court declines to further consider Defendant's arguments.

7

F.2d 1301, 1306 (8th Cir. 1984). To succeed in suppressing a photographic lineup identification on the grounds that the lineup was impermissible suggestive, the "suggestive procedure" must create "a very substantial likelihood of irreparable misidentification." United States v. Gilbert, 721 F.3d 1000, 1006 (8th Cir. 2013) (internal citations omitted).

Here, Detective Treis presented four headshots to the victims to review. Detective Treis showed each victim separately all four photographs. The photographs were of four black males who were reasonably similar in appearance. Detective Treis testified at the hearing that Defendant selected the first position in the lineup.

Defendant objects that because Defendant's photograph was presented first, the identification procedure was suggestive. More specifically, counsel appears to liken the procedure used here to a single-photograph display. To the contrary, the identification procedure here does not constitute a single-photograph display. Although the victims identified Defendant from a single photograph, they saw his photograph as part of a series of photographs. The procedure used here was not impermissibly suggestive. See United States v. Omar, 786 F.3d 1104, 1109 (8th Cir. 2015).

Defendant's complaint about the appearance of the other individuals in the photographic array is equally unavailing. At the hearing, counsel argued that Defendant and the three other photographed individuals varied in height and weight. However, the photographs used were head shots, thus, the height and weight of the individuals is largely irrelevant. Moreover, the differences in appearance were not so significant that the procedure was rendered suggestive. See U.S. v. Rose, 362 F.3d 1059, 1066 (8th Cir. 2004). See also U.S. v. Harris, 636 F.3d 1023, 1026 (8th Cir. 2011) (slight variations do not render photographic array suggestive particularly where defendant fails to explain why the variations suggest to the witnesses that police suspected

him).

Finally, Defendant asserts that because Defendant is the only individual wearing a t-shirt with a large logo, the photographic lineup was flawed. Each of the individuals in the photographs had on different clothing and one of the other individuals also had a logo on his clothing. The minor clothing differences do not create a substantial likelihood of irreparable misidentification.

**ACCORDINGLY**,

**IT IS HEREBY RECOMMENDED** that Defendant's motions to suppress evidence [Docs. 79 and 80] be **DENIED**. The parties are advised that they have **fourteen (14) days** in which to file written objections to this Recommendation pursuant to 28 U.S.C. Section 636(b)(1). Failure to file timely objections may result in waiver of the right to appeal questions of fact.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of March, 2017